# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROCKY L. FREEMAN,** | : | **CIVIL NO. 1:15-CV-666** |
| **Petitioner** | : | |
| | : | **(Chief Judge Conner)** |
| v. | : | |
| | : | |
| **J.L. NORWOOD, Regional Director,** | : | |
| **CAPTAIN S. SPAULDING,** | : | |
| **Warden, J. LINCALIS, Unit Manager,** | : | |
| **J. LOCKWOOD, Counselor, G.** | : | |
| **CHAMBERLIN, Case Manager, D.** | : | |
| **BETZER, Counselor, D.** | : | |
| **GEMBERLING, Corrections Officer,** | : | |
| **Respondents** | : | |

## **MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Rocky Freeman ("Freeman"), a federal inmate incarcerated at the Federal Correctional Institution, Allenwood Medium, in White Deer, Pennsylvania. He contends that his due process rights were violated in the context of a prison disciplinary hearing. The petition is ripe for disposition and, for the reasons that follow, will be dismissed.

**I.    Background**

In Incident Report Number 2532163, dated December 31, 2013, Freeman was charged with refusing to work, refusing to obey an order of any staff member, and being in an unauthorized area, in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Sections 306, 307, and 316. (Doc. 9-1, p. 12). The incident is described by the reporting officer as follows:

> On the above date and time, I was assigned as Compound #1 Officer. I was directing the 10 minute move, when I observed inmates standing around the compound flag pole. I ordered all of the inmates to move to their respected housing units, at which time inmate Freeman, Rocky #47292-053 appeared to ignore my orders. I again, gave the inmates a verbal direct order to keep moving, and inmate Freeman began laughing and stated "Yeah, Ok". I told this inmate that he could do an hour of extra duty, for his unwillingness to listen to this officer's orders. Inmate Freeman took a snow shovel and stated "I will go walk around with it, but I'm not shoveling no snow". At 12:00 pm, I did not see inmate Freeman on the compound, as he was ordered to be. When I walked by the Barber Shop, inmate Freeman was walking out of the open Barber Shop door. This inmate was to be on the compound doing his extra duty, not in, or around, the Barber Shop. I gave the inmate another direct order, to complete his extra duty, and he stated "I have a restriction, and I can't lift more than 15 pounds". I directed inmate Freeman to go to the Lieutenant[']s Office and wait for further instructions.

(Id. at 12).

Freeman was notified of the incident report on the same date, December 31, 2013. (Id.) The Unit Disciplinary Committee ("UDC") review took place on January 6, 2014, at which time Freeman proclaimed, "I did not refuse to work, I never disobeyed an order and I was never in an unauthorized area." (Id.) The UDC Chairman found Freeman "guilty on all charges due to the officer's statement and the Lt's investigation which agreed with the charges." (Id.) Freeman was sanctioned to a total of 21 days loss of visitation for violation of Codes 306, 307, and 316. (Id.) He did not lose any good conduct time. (Id.) Freeman was advised of the right to file an appeal within 20 calendar days. (Id.)

Freeman appealed the January 6, 2014 UDC decision and the matter was ultimately remanded to the UDC for a rehearing. (Doc. 1, p. 17; Doc. 9-1, pp. 13-14). A rehearing was held on July 18, 2014, wherein Freeman stated, "I didn't refuse the work, I never disobeyed an order and I was never in an unauthorized area. You can review the Barber Shop video camera and to attest that I was not in an unauthorized area." (Doc. 1, p. 13; Doc. 9-1, p. 14). On this occasion, the UDC found Freeman not guilty of violation of Code 306, refusing to work, guilty of violation of Code 307, refusing to obey an order of any staff member, and guilty of violation of Code 316, being in an unauthorized area. (Id.) Freeman was sanctioned to a total of 14 days loss of visitation for violation of Codes 307 and 316. (Id.) Freeman did not lose any good conduct time. (Id.) He was further advised of the right to appeal the findings of the Committee within 20 days. (Id.)

The instant petition was filed on April 6, 2015. (Doc. 1).

## II.  Discussion

A protected liberty interest in avoiding prison disciplinary sanctions may arise either from the Due Process Clause itself or from statutory law. See Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002). It is well-settled that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. (Id.) Freeman, however, fails to make a cognizable due process claim as the disciplinary sanctions he received do not implicate any liberty interests that are

3

protected by the Due Process Clause.  See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) (affirming dismissal of habeas petition where disciplinary sanctions did not result in the loss of good conduct time).  To invoke the Due Process Clause, Freeman must first identify a liberty interest that has been violated.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  Prisoners are entitled to due process protection only when the disciplinary action results in the loss of good conduct time or when a penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In the instant action, Freeman does not allege that he lost any good time credit.  Further, his Disciplinary Record confirms that he did not lose any good conduct time.  Rather, his disciplinary infraction resulted only in a temporary loss of visitation privileges, which does not implicate a protected liberty interest as it did not result in any atypical or significant hardship in relation to the ordinary incidents of prison life.  See, e.g., Perry v. Lackawanna Cnty. Children & Youth Serv., 345 Fed. App'x 723, 726-27 (3d Cir. 2009) (temporary loss of visitation does not qualify as an atypical or significant hardship because "prisoners do not have constitutionally-protected interests in prison visitation"); Gonzelez v. Zickenfoose, 2014 WL 257850, at *2 (M.D. Pa. 2014) (Caputo, J.) (temporary loss of commissary, visitation and email privileges do not "implicate a protected liberty interest as they do not result in any atypical or significant hardships in relation to the ordinary incidents of prison life").  Moreover, while the Unit Discipline Committee can

4

impose a variety of sanctions, the UDC cannot sanction an inmate to loss of good conduct time.  See 28 C.F.R. § 541.7(f) ("the UDC can impose any of the available sanctions listed in Tables 1 and 2, except loss of good conduct sentence credit, disciplinary segregation, or monetary fines").  Additionally, in his traverse, Freeman acknowledges that he has not stated a cognizable habeas corpus claim and, "[a]t this time, [he] must concede." (Doc. 11, p. 1).

Accordingly, the outcome of the disciplinary hearings, which did not affect Freeman's good time credits and thus has no impact on the fact or length of his sentence or confinement, cannot be challenged under section 2241.  See Castillo v. FBOP FCI Fort Dix, 221 Fed. App'x 172 (3d Cir. 2007); Leamer, 288 F.3d at 540-42.

### III.  Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be dismissed.  An appropriate Order follows.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     May 19, 2015